# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CHINA ALARM HOLDINGS ACQUISITION LLC, and POPE INVESTMENTS, LLC, | : <br> : <br> :     Civil Action No. 2:10-cv-02495 |
| Plaintiffs, | : |
| v. | : |
| ING YIM LEUNG ALEXANDER A/K/A ALEX ING, HOWARD BALLOCH, and SAMUEL A. STERN, | : <br> : |
| Defendants. | : |

### PLAINTIFFS CHINA ALARM HOLDINGS ACQUISITION LLC AND POPE INVESTMENTS, LLC'S BRIEF IN OPPOSITION TO DEFENDANT ING YIM LEUNG ALEXANDER'S MOTION TO DISMISS

PHILIP B. SEATON
LAW OFFICE OF PHILIP B. SEATON
939 East Riverwalk Drive
Memphis, TN 38120
(901) 747-3733
*pbseaton@seaton-law.com*

**INTRODUCTION**

Defendant Ing Yim Leung Alexander has filed a motion to dismiss under Rule 12(b)(6) for failure to state a Rule 10b-5 claim. He argues that the Supreme Court's recent decision in *Morrison v. National Australia Bank*, 130 S.Ct. 2869 (2010), requires dismissal. In *Morrison*, the Supreme Court held that Rule 10b-5 does not apply extraterritorially and that "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with [1] the purchase or sale of a security listed on an American stock exchange, ***and [2] the purchase or sale of any other security in the United States.***" Here, the claims involve the ***domestic purchase*** of a foreign security that does not trade on any foreign exchange. Consequently, Rule 10b-5 applies and *Morrison* is inapplicable

**FACTS**

In or about June 2004, non-party Pope Asset Management was introduced to Defendant Alex Ing, who approached William P. Wells seeking on behalf of a company named China Alarm Holdings Limited ("China Alarm") located in Hong Kong, but formed under the laws of the British Virgin Islands, American investors to purchase a convertible note in the sum of US $10 million. *See* Compl. ¶ 9.

In order to induce an investment in China Alarm, the defendants prepared and delivered through Ing, a Confidential Information Memorandum ("CIM") on or about July 21, 2004. The CIM detailed the uses of the funds sought and made specific reference to Defendants Ing, Balloch and Stern's active participation in the management and control of China Alarm. The CIM, for instance, described Stern as follows:

> ***Mr. Samuel A. Stern,*** *Director, U.S.;* Mr. Stern has over 40 years of corporate legal advisory experience and is the partner of the Hills & Stern, one of the prominent law firms in Washington, D.C., U.S.A. Mr. Rod Hills, the partner of

1

> Mr. Stern, was the former chairman of the Securities and Exchange Commission (SEC) of the United States of America and Ms. Carla Hills was the former Administrative Secretary of the Senior Mr. George Bush, the former President of the United States of America.  Mr. Stern was the former Managing Partner of the Wilmer, the Cutler and the Pickering and was a lecturer in the Harvard Law School.  Mr. Stern graduated from the Harvard Law School. . . .

*See* Compl. Ex. 1 p.37.

> Stern was a well-known international attorney dealing in investment and trade with emerging and transitional economies such as China.  His involvement in China Alarm was meant and used to assure Western investors that China Alarm was managed like a Western company, and that Stern, as a director, would oversee its actions.  Every indication was that Stern, a successful lawyer experienced in capital market transactions, was involved in the control and operation of China Alarm and Ing's solicitation of potential investors.  *See* Compl. ¶ 27.  Stern's oversight and control over China Alarm and Ing was evidenced by the fact that Stern on behalf of China Alarm executed an Employment Agreement dated March 1, 2004, Stornaway, China Alarm's largest shareholder, under which China Alarm employed Ing as its CEO.  In addition, Stern was also a member of China Alarm's compensation committee.  *See* Compl. ¶ 28.

As a consequence of the representations of the CIM, a summary term sheet was prepared and circulated, describing an entity that was to be formed with Pope Asset Management as manager to invest in China Alarm by purchasing a convertible note in the sum of US $10 million.  On February 1, 2005, Plaintiff China Alarm Holdings Acquisition LLC ("CAHA") was formed as a Delaware limited liability company with Pope Asset Management as its manager.  On February 8, 2005, a Subscription Agreement ("February 8th Subscription Agreement") was executed by Defendant Alex Ing on behalf of China Alarm and William Wells on behalf of Pope Asset Management as manager for CAHA.  The February 8th Subscription Agreement required CAHA to purchase a convertible note in the aggregate principal amount US $10 million with a three-year retainment term due on February 8, 2008.

In further need of capital, Ing solicited another investment similar to the one made by CAHA.  Plaintiff Pope Investments made the investment.  On March 6, 2006, a Subscription Agreement ("March 6th Subscription Agreement") was executed by Defendant Alex Ing on

behalf of China Alarm and William Wells on behalf of Pope Asset Management as manager for Pope Investments.  The March 6th Subscription Agreement required Pope Investments to purchase a convertible note in the aggregate principal amount US $5,555,561 million with a three-year retainment term due on March 6, 2009.  The terms of the March 6th Subscription Agreement were materially the same as the earlier February 8th Subscription Agreement.

At all times, China Alarm, by and through Ing, warranted and represented that the proceeds of the convertible notes would be utilized for the development and construction of security infrastructure systems and appropriate networks in Beijing, China and thereafter, in other Chinese cities.  Plaintiffs allege that Stern, as a director and principal in the management of China Alarm, was aware of representations made by Ing to Plaintiffs that the funds invested in the purchase of the convertible notes would be utilized only for corporate purposes in the normal and ordinary course of business activity expanding the China Alarm security business in China.

Undisclosed to Plaintiffs at the time of the execution of the Subscription Agreements, a contract existed for services ("Services Agreement") by and between China Alarm and Warp Cybertech Limited ("Warp"), a corporation wholly-owned and controlled by Alex Ing, dated January 15, 2004, under which, from 2005 until 2009, Ing through Warp diverted US $8.8 million from China Alarm without disclosure to Plaintiffs or legitimate business purpose.

Further undisclosed to Plaintiffs at the time of the execution of the Subscription Agreements, was the existence of an Employment Agreement ("Employment Agreement"), between China Alarm and Stornaway, under which China Alarm employed Ing as its CEO. Contrary to what was represented in the CIM, the compensation payable under the Employment Agreement was not conditioned on China Alarm attaining profitability.

Had the disclosure of the existence of the Service Agreement and Employment Agreement been made known, Plaintiffs allege they would not have purchased the convertible notes nor invested in China Alarm.

In 2009, liquidation proceedings were instituted against China Alarm in the British Virgin Islands, and Messrs. Cosimo Borelli and Meade Wilbur Malone were appointed as joint liquidators for China Alarm. Thereafter, pursuant to the Order of Liquidation, Mr. Borelli as co-liquidator received from Defendant Alex Ing the books and records of China Alarm. The liquidators' examination of the books and records led to the discovery of both the Services Agreement and the Employment Agreement.

Mr. Borelli as liquidator prepared trial balances for the period January 1, 2005 through May 31, 2009, which revealed that under the Service Agreement US $8.8 million had been paid to Alex Ing through Warp and US $1.7 million paid to Ing through Stornaway under the Employment Agreement.

The disclosure of the Services Agreement and Employment Agreement was not made known to Plaintiffs until after the appointment of Messrs. Cosimo Borelli and Meade Wilbur Malone, as joint liquidators for China Alarm. The existence of the Employment Agreement and Services Agreement contradicted the representations in the CIM and the Subscription Agreements concerning Ing's compensation, the absence of related-party contracts, and the intended use of the proceeds from Plaintiffs' investments.

In 2010, Plaintiffs filed a two-count Complaint against Defendants Alex Ing, Samuel Stern, and Howard Balloch. The first count asserted a claim against Defendant Alex Ing for securities fraud in violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Exchange Act Rule 10b-5 (17 C.F.R. § 240.10b-5). The second count asserted a "control

person" liability claim against Defendants Stern and Balloch under Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)).

## ARGUMENT

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Rule 8(a).  *See Hill v. Lappin*,630 F.3d 468,470-71 (6th Cir. 2010).  This pleading standard does not require "detailed factual allegations." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Rather, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.*  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In *Morrison*, the Supreme Court held that Rule 10b-5 does not apply extraterritorially to foreign securities transaction.  "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with [1] the purchase or sale of a security listed on an American stock exchange, ***and [2] the purchase or sale of any other security in the United States.***"  *Morrison v. National Australia Bank*, 130 S.Ct. 2869 (2010) (emphasis added).  Here, it is specifically alleged in the Complaint that the purchase of the securities occurred in the United States:

> 16.	Wells signed the February 8th Subscription Agreement on behalf of CAHA in Memphis, Tennessee.  The February 8th Subscription Agreement required CAHA to purchase a convertible note in the aggregate principal amount US $10 million with a three-year retainment term due on February 8, 2008.  The convertible note was purchased by CAHA in the United States.
>
> 17.	Wells signed the March 6th Subscription Agreement on behalf of Pope Investments in Memphis, Tennessee.  The March 6th Subscription Agreement required Pope Investments to purchase a convertible note in the aggregate principal amount US

>$5,555,561 million with a three-year retainment term due on March 6, 2009. The convertible note was purchased by Pope Investments in the United States.

*See* Compl. ¶¶ 16, 17.

Alleging that the securities were purchased in the United States as part of a private transaction satisfies *Morrison* and is sufficient to withstand a Rule 12(b)(6) motion. For example, in *Quail Cruises Ship Management Ltd. v. Agencia De Viagens CVC Tur Limitada*, 645 F.3d 1307 (11th Cir. 2011) (per curiam), the Eleventh Circuit reversed a district court for dismissing a Complaint under *Morrison* where the plaintiff in a private stock acquisition purchased the stock of a foreign corporation and alleged "[t]he transaction for the acquisition of the . . . stock closed in Miami, Florida." The Eleventh Circuit noted that the district court was obligated on a Rule 12(b)(6) motion to accept the plaintiff's allegations as true and that the plaintiff had sufficiently alleged the purchase of a security in the United States. Consequently, even though the security purchased was a foreign one, because the closing for the private transaction occurred in the United States, the Eleventh Circuit concluded that Rule 10b-5 was not being applied extraterritorially and thus *Morrison* did not apply.

Ing and this Court have cited the Second Circuit's opinion in *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 672 F.3d 143 (2d Cir. 2012), to argue and hold that the transactions alleged in the Complaint are not domestic transactions. In *Absolute Activist*, the Second Circuit held that "transactions involving securities that are not traded on a domestic exchange are domestic if irrevocable liability is incurred or title passes within the United States." *Id.* at 150. That is, "that the purchaser incurred irrevocable liability within the United States to take and pay for a security, or that the seller incurred irrevocable liability within the United States to deliver a security." *Id.*

Plaintiffs have satisfied the *Absolut Activist* standard.  They allege they signed the Subscription Agreements in Memphis, Tennessee.  *See* Compl. ¶¶ 16, 17.  That is where they incurred irrevocable liability to pay for the securities.  Accordingly, for purposes of a Rule 12(b)(6) motion, plaintiffs have adequately alleged the existence of a domestic transaction that supports the assertion of a Rule 10b-5 claim.

## CONCLUSION

For all of the foregoing reasons, Defendant Ing's Motion to Dismiss should be **DENIED.**

Respectfully submitted,

Dated:  July 8, 2013                                       */s/ Philip B. Seaton*
PHILIP B. SEATON
LAW OFFICE OF PHILIP B. SEATON
939 East Riverwalk Drive
Memphis, TN 38120
(901) 747-3733
*pbseaton@seaton-law.com*

Attorneys for Plaintiffs
China Alarm Holdings Acquisition LLC and
Pope Investments, LLC

## CERTIFICATE OF SERVICE

I, Philip B. Seaton, certify that on July 8, 2013, I served this brief upon counsel of record via the ECF System.

Dated:  July 8, 2013                                       */s/ Philip B. Seaton*
PHILIP B. SEATON